251 A.2d 525.

KLEISTONE RUBBER COMPANY *vs.* MARY AUDETTE.

MARCH 20, 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

POWERS, J. This is an employer's petition to review a compensation agreement. The cause is before this court on the respondent employee's appeal from a final decree of the full commission. The decree appealed from contains two findings which, employee contends, are not supported by competent evidence and are otherwise contrary to law.

The record discloses that on February 19, 1963, employee, appellant here, complained to her employer, appellee here, of an injury alleged to be work-connected. Subsequently, September 25, 1963, a consent decree was entered, establishing that employee was suffering from a "tenosynovitis and crepitus of the right thumb" and that this condition

arose out of and in the course of her employment. The decree further fixed her average weekly wage at $75 and awarded her compensation for total disability from February 21, 1963, through August 5, 1963, and compensation for partial incapacity from August 6, 1963, until otherwise modified and terminated.

There then followed successive employer's petitions to review. The first was denied by a single commissioner and unappealed. With the filing of employer's second petition, employee also filed a petition to review, the employer seeking to terminate compensation and employee seeking to establish that her incapacity had become total. These petitions were heard by a single commissioner who denied and dismissed both petitions. This resulted in employee continuing to receive compensation for partial incapacity. The decree thus fixing employee's benefits as of that time was entered February 10, 1965.

Some time thereafter, employer filed another petition to review which, after a hearing before a single commissioner, was appealed to the full commission. On February 14, 1966, said commission entered a decree authorizing the employer to suspend compensation benefits by reason of the commission's finding that employee's incapacity for work resulting from her injury of February 19, 1963, had ended.

The employee took no appeal from that decree to this court. Rather, she filed a petition to review on the ground that her incapacity for work had returned. After a hearing thereon a decree was entered on June 29, 1966, which contained the finding that on June 11, 1966, employee had returned to work but was partially incapacitated and had been so since the entry of the February 14, 1966, decree suspending compensation. The June 29, 1966, decree ordered payments of compensation for maximum partial incapacity from February 14, 1966, to June 11, 1966, and payments of not more than $15 weekly for partial incapacity on weekly earnings of $50 since her return to work.

The employer did not appeal from that decree. Rather, on November 21, 1966, it filed the instant petition to review on the customary ground that employee's incapacity for work had ended. Several hearings were held thereon before a single commissioner, the first such being February 14, 1967.

Prior thereto but subsequent to the filing of the employer's petition, employee was examined at the request of the commissioner by Dr. John O. Strom, neurologist. His report was made part of the record by the single commissioner at the first hearing. On that occasion, neither party was fully prepared and the single commissioner continued the hearing to February 28, 1967. However, said recessed hearing did not resume until October 31, 1967.

At said second hearing, employer, without objection, introduced the medical reports of nine medical experts, all of whom had either treated or examined employee at some time after her injury of 1963, and prior to the entry of the June 29, 1966 decree. Additionally, employer introduced, again without objection, the medical report of Dr. Arthur E. Martin, medical director of the Dr. John E. Donley Rehabilitation Center where employee was treated, according to said report, from May 14, 1964, to August 19 of the same year. With the introduction of these reports, the hearing was again recessed for the taking of testimony.

The hearing was resumed on November 13, 1967. On that occasion, employer, the moving party, called as its witness Dr. Michael E. Scala, an orthopedic surgeon. Notwithstanding that he had been called by employer, Dr. Scala was employee's personal physician and had been treating her since October 11, 1966. He testified in effect that employee was suffering from a condition he diagnosed as "a median nerve carpal tunnel syndrome," which he described as "* * * a strong tight band at the wrist that squeezes down on the nerve." It was the further thrust of

his testimony that this condition rendered employee permanently and partially disabled for anything but light work. This testimony as to employee's medical condition was corroborated by the medical report of the impartial examiner, Dr. Strom.

At the conclusion of Dr. Scala's testimony and employer's introduction of three additional medical reports made by Dr. Scala, as well as employee's introduction of a report of Dr. Scala dated May 1, 1967, employer rested.

In light of Dr. Scala's testimony and the medical reports in evidence, employer moved and was permitted to amend its petition so as to allege, "If the employee has any incapacity, it is not the result of her injury of February 19, 1963 as described in the consent decree of W.C.C. 63-1178." Confronted with what she considered to be a narrowing of the issue on which employer had the burden of proof, employee requested and was given a further continuance in which to prepare her defense.

On December 19, 1967, the hearing was resumed and Dr. Scala again called, this time by employee. Dr. Scala then testified that employee still had problems with the "tenosynovitis" and that her incapacity for work was partially attributable to this condition. He conceded, however, that the latter condition and "carpal tunnel syndrome" were, as he expressed it, "two distinct entities," and that one could not flow from the other. He suggested, however, that the two conditions had existed simultaneously and might have resulted from the same injury. He reiterated, however, that they were separate and distinct conditions saying, "they are not related tissuewise medically."

The single commissioner then called Dr. Scala's attention to the fact that in none of four of Dr. Scala's medical reports in evidence was there any mention of employee's original complaint, namely a "tenosynovitis and crepitus of the right thumb." Dr. Scala conceded this to be so, but

called attention to his report of November 7, 1966. Therein he stated that employee, since the date of her injury in 1963, had been intermittently treated for "De Quervain's disease" and that this treatment had continued to the time of his report. Dr. Scala identified "De Quervain's disease" as another name for tenosynovitis.

This November 7, 1966 report of Dr. Scala, however, added that employee had minimal disability and that he did not plan to see her many more times. The single commissioner then pointedly asked Dr. Scala if he would now testify that De Quervain's disease or tenosynovitis was a disabling factor with employee. To this Dr. Scala replied that it was part of employee's problem but that the preponderance of disability was due to the median carpal condition.

Doctor Scala was the only witness to testify. On the basis of his testimony and the medical reports in evidence, particularly that of Dr. Strom, the single commissioner found that employee's incapacity for work resulting from the tenosynovitis and crepitus of the right thumb had ended. A decree containing this finding and ordering suspension of compensation payments was duly entered.

From this decree, employee appealed to the full commission. In her reasons of appeal to the full commission, employee asserted four assignments of error. They may be stated to be that the finding of no disability resulting from tenosynovitis and crepitus of the right thumb was contrary to the evidence; that the decision and decree were against the law in that the single commissioner failed to recognize the disability flowing from the secondary condition of carpal tunnel syndrome; that there was no evidence to support a finding that employee was not disabled by reason of the carpal tunnel syndrome; and that the decision and decree were against the law in that the single commissioner failed to recognize that the uncontradicted

medical testimony established that the work-connected injury of February 19, 1963, was misdescribed in the consent decree.

The full commission independently examined the record, rendering a written decision in which they reviewed the evidence on which they relied in denying and dismissing employee's appeal. This evidence consisted of the prognoses as well as the diagnoses of all of the neurologists, neurosurgeons and orthopedic surgeons who had either treated or examined employee from the time of her injury in 1963 to the time she came under Dr. Scala's care, as well as Dr. Scala's testimony, reports and the report of Dr. Strom's impartial examination. In their decision the commission noted that, as they viewed it, the evidence preponderated in favor of a finding that while employee may still be suffering some discomfort, her incapacity for work had ended. Accordingly, they caused to be entered a final decree which contained the following findings:

> "The respondent is no longer incapacitated for work either in whole or in part as a result of her injury of February 19, 1963.
> "The respondent's incapacity for work has ended."

From this decree, employee seasonably appealed to this court. Her reasons of appeal are six in number, but they can be compressed into three assignments of error. These are: that there is no legal evidence to support a finding that employee is no longer incapacitated for her regular work; that the full commission erred in failing to take into account that the injury set forth in the consent decree was misdescribed and to weigh the evidence in light of her true injury; and that limiting her injury of February 19, 1963, to the condition described in the consent decree was contrary to the undisputed evidence and the law.

It is employee's first contention, as we understand it, that the full commission erred as a matter of law in giving consideration to the medical reports which predated the

entry of the June 29, 1966 decree, by the terms of which employee was awarded compensation for partial incapacity, and pursuant to which decree she was receiving such compensation when the instant petition to review was brought. This is so, she argues, for the reason that to give such reports probative value adverse to her is tantamount to readjudicating the issue of incapacity resolved in her favor by the entry of the June 29, 1966 decree. Continuing, she further argues, in effect, that absent the medical reports in question, the record before the full commission contains only Dr. Scala's undisputed testimony, corroborated by the report of Dr. Strom's impartial examination, that employee's partial incapacity remains.

These arguments lack merit in all respects. The reports in question were received in evidence by the single commissioner without objection from employee. Having thus become part of the record, they were available to the full commission, not to readjudicate the issue of partial incapacity as of June 29, 1966, but for such probative value as they might possess in evaluating all the evidence on the issue of whether her incapacity had ended since the entry of the June 29, 1966 decree. See *Ostby & Barton Co. v. Curcio,* 75 R. I. 82, 63 A.2d 784. It is clear from a reading of their decision that taken in connection with Dr. Scala's testimony that disability resulting from the tenosynovitis was minimal, the full commission viewed the prognoses of the challenged reports as probative support for the inference that employee's incapacity for work resulting from the February 19, 1963 injury had ended. Furthermore, even if the challenged medical reports were not part of the record, Dr. Scala's testimony and medical reports made after the June 29, 1966 adjudication of partial incapacity minimizing any incapacity resulting from the injury described in the consent decree as a "tenosynovitis and crepitus of the right thumb" were competent to support the

full commission's finding that such partial incapacity has now ended.

But, employee vigorously contends, the decree of the full commission is erroneous in that it contains the finding that employee is no longer incapacitated, either in whole or in part, as a result of the work-connected injury of February 19, 1963. This finding, employee argues, is contrary to Dr. Scala's undisputed testimony that the "median nerve carpal tunnel syndrome" incapacity, which is undisputed, is an off-shoot of the industrial injury which gave rise to the condition "tenosynovitis and crepitus of the right thumb." She concedes that the two conditions are medically separate and distinct. Nevertheless, pointing to the fact that there is no evidence to contradict Dr. Scala's testimony that both conditions resulted from the same injury, she argues, in effect, that the full commission erred in failing to follow the rule laid down by this court in *Ricci* v. *United States Rubber Co.*, 88 R. I. 149, 143 A.2d 691.

In that case this court held that the provisions of G. L. 1956, §28-35-45, on the authority of which an employee or an employer may bring a petition to review, were broad enough to warrant the bringing of such a petition by an employee to prove, if he could, that the injury set forth in a preliminary agreement or decree was misdescribed. We are in accord with the holding of that case but cannot agree that the decree of the full commission in the instant case is violative of the *Ricci* rule.

The instant employee overlooks the posture of her appeal to the full commission. It was from the decree of a single commissioner granting the employer's petition to review, which petition was predicated on the employer's allegation that incapacity resulting from the injury as described in the consent decree had ended. So postured, the full commission was concerned with only the injury as described. Indeed, in their decision, they took pains to point out that

they were entering a decree identical to that which had been previously entered by them on February 14, 1966, meaning thereby that, in the posture of the appeal before them, they were concerned only with the injury as described in the consent decree. Stated otherwise, the single commissioner in the first instance, hence the full commission on appeal did not have before them the question of whether the injury of February 19, 1963, as set forth in the consent decree was misdescribed.

The appeal is denied and dismissed, the decree appealed from is affirmed and the cause is remanded to the workmen's compensation commission for further proceedings.

*Keenan, Rice & Dolan, H. Eliot Rice,* for petitioner-appellee.

*Carroll, Kelly & Murphy, Joseph A. Kelly,* for respondent-appellant.